UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTIAN DAIGRE,

    Plaintiff,

    v.

THE CITY OF HARVEY and
ERIC KELLOGG,

    Defendants.

No. 04 CV 4224
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Christian Daigre ("Daigre"), a white male, has filed suit against Defendants Eric Kellogg ("Kellogg"), an African-American male who is Mayor of the City of Harvey, in his individual capacity, and the City of Harvey ("Harvey"). Daigre alleges that Defendants violated his rights under Section 1981 and Title VII of the Civil Rights Act of 1964.[1] Specifically, Daigre alleges that he was a victim of reverse race discrimination when he was fired from his position as an appointed police officer for Harvey. After completing discovery, Defendants Kellogg and Harvey now move for summary judgment on both counts. For the following reasons, Defendants' motion is granted.

---

[1] In his response brief, Plaintiff abandoned his Section 1981 claim against Harvey and his Title VII claim against Kellogg. What remains is Plaintiff's Section 1981 claim against Kellogg and Plaintiff's Title VII claim against Harvey.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable party could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the non-moving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F. 3d 560, 562 (7th Cir. 1996).

## III. STATEMENT OF RELEVANT FACTS

During the summer of 2002, Daigre completed an application for a police officer position at the request of the then-mayor, Nickolas Graves. Daigre interviewed for the position and was informed by then-Chief Deputy Barton that he would be temporarily appointed as a police officer and not immediately hired as a permanent civil service police officer. Daigre was officially appointed on September 30, 2002. Appointed officers are allowed to remain employed for 120 days. After that, they must become civil service officers by passing a written test and an oral interview with the Civil Service Commission. Daigre took the requisite written test and had an oral interview. Daigre claims he scored second highest on the written test, though he has failed to produce any supporting evidence in this regard. Nonetheless, Daigre was not made a civil service officer, but others who passed the written test were.

In April 2003, Kellogg was elected as Mayor of Harvey. Subsequently, Andrew Joshua became the Chief of Police of Harvey ("Chief Joshua"). In this capacity, Chief Joshua was responsible for the daily operations and policies of the Harvey Police Department. As such, Daigre inquired with Chief Joshua about his status of becoming a civil service officer, and Chief Joshua responded he would look into it. Chief Joshua found out from his predecessor, Chief Deputy Barton, that Daigre had not passed his oral interview and that Barton had intended to terminate Daigre because his 120 days of appointment had expired. The only reason Barton had not already terminated Daigre was because Barton lost track of time.

On April 13, 2004 Daigre and other officers complained to their union representative about racial comments they overheard on the police radio. While Daigre does not know for sure who made the comments, he believes that Commander Darnell Keel ("Commander Keel") is

3

responsible. Daigre claims the speaker said that he intended to work with Kellogg to eliminate the white officers in the Harvey Police Department. The union representative wrote a letter to Chief Joshua informing him of the possible racial comments. Chief Joshua and an investigator listened to the tapes of the radio and could not find any racial language. Daigre also asserts that Commander Keel encouraged officers to take bribes so long as there were no witnesses. Again, these allegations were never confirmed.

As of April 1, 2003, when Kellogg became mayor, Harvey employed sixteen white police officers. From April 1, 2003 to December 31, 2004, Harvey discontinued the employment of six officers, either by terminating or declining to reappoint them. Those officers included one white officer (Daigre), three African-American officers, and two bi-racial officers. After Kellogg became mayor, Harvey hired thirty-six civil service officers, thirty-five of which were African-American or Hispanic.

Chief Joshua terminated Daigre on June 4, 2004. Prior to his termination, Daigre received nine disciplinary actions throughout his appointment: he was reprimanded for being late to work on multiple occasions, fabricating his productivity time sheets, abusing his sick time, and not properly searching a man prior to booking him. That man had a 12 ½ inch knife concealed on his person, and thus Daigre put other officers in danger. These disciplinary issues, combined with the fact that Daigre did not pass his oral interview, and that Daigre was well past the allowed 120 days for appointees, led Chief Joshua to make the decision to terminate him.

## IV. DISCUSSION

### A. Section 1981 Claim Against Kellogg Individually

Individual liability under Section 1981 must be premised upon personal participation in the alleged discrimination. *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985); s*ee also Togba v. County of Cook*, 48 F. Supp. 2d 1104, 1112 (N.D. Ill. 1999) (finding that individual liability is only present when the individual personally participated in the discrimination).

Here, Plaintiff must show that Defendant Kellogg personally discriminated against him and terminated him on the basis of his race. The record in this case shows that Kellogg did not make the decision to terminate Plaintiff. Rather, Chief Joshua made the decision. On June 4, 2004, Daigre received a letter from Chief Joshua terminating him. The letter stated that Daigre was terminated for his multiple disciplinary missteps and his lack of effort to change his behavior.

Plaintiff cannot point to any specific evidence that indicates Kellogg had personal involvement with the decision to terminate him. Instead, Daigre relies on a deposition from Chief Joshua taken in a prior case, in which Chief Joshua indicated that Kellogg was involved in the hiring and firing of some police officers. However, Daigre offers no evidence to show that Kellogg had the same influence in this specific instance. Rather, Kellogg testified in his deposition that the general practice is for a committee to meet and discuss hiring and firing of officers. While Kellogg was a member of the committee, the ultimate decision always rested with the police chief, who at the time of Daigre's termination was Chief Joshua. The committee does not vote; each member can give an opinion and discuss the potential promotion or

5

termination. The chief takes all discussions into consideration when he makes his decisions. Daigre has offered no evidence to show that Kellogg had an influence over the committee or Chief Joshua; indeed nothing suggests that Kellogg overstepped his role as a committee member in this specific case.

Because Daigre offers no evidence and cannot show that Kellogg was personally involved and personally participated in the alleged discrimination against him, Kellogg cannot be held liable under Section 1981.

### B. Title VII Claim Against the City of Harvey

Daigre's remaining claim against the City of Harvey alleges a violation of Title VII for reverse race discrimination in the workplace. Title VII of the Civil Rights Act of 1964 makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Daigre may prove his case of intentional employment discrimination under Title VII by using either the direct or indirect method of proof. *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681,685 (7th Cir. 2008) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Daigre has only proceeded under the indirect method; as such I do not address the direct method.

Under the indirect, burden-shifting method, Daigre has the initial burden to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Thus, to prove reverse race discrimination, Daigre must show: (1) "background elements" which establish that Harvey is the rare employer who discriminates against the

majority; (2) that Daigre was meeting Harvey's legitimate expectations; (3) that Daigre suffered an adverse employment action; and (4) that similarly situated non-white employees were treated better than Daigre. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 455-57 (7th Cir. 1999); *Hefley v. Vill. of Calumet Park*, 2007 U.S. App. LEXIS 15418, *4-5 (7th Cir. 2007). If Daigre satisfies each of these elements, the burden shifts to Harvey to show a legitimate, non-discriminatory reason on which it based its decision to terminate Daigre. *See McDonnell Douglas*, 411 U.S. at 802-03. If Harvey successfully satisfies this requirement, then the burden shifts back to Daigre to prove that Harvey's stated reason is a pretext for reverse race discrimination. *Id.* at 804.

### 1. Harvey's Legitimate Expectations

Daigre cannot satisfy the second element because he cannot show that he was meeting Harvey's legitimate employment expectations.[2] Throughout the course of his employment, Daigre received nine disciplinary actions against him. Each time, Daigre received a letter informing him of these actions. All of these actions violate the Harvey Police Department Rules and Regulations:

> (1) Feb. 16, 2003: Daigre missed a bond hearing for the second time and received a one-day suspension.
>
> (2) Nov. 2, 2003: Daigre was late for work and was docked pay.
>
> (3) Nov. 4, 2003: Daigre was late for work and was docked pay.

---

[2] Daigre contends that since Harvey only makes arguments regarding the second and fourth elements, it concedes the first and third elements. Harvey neither addresses nor concedes the first element ("background factors"). Harvey must concede the third element, that Daigre was subject to adverse employment action, because it is undisputed that Daigre was terminated.

(4) Nov. 10, 2003: Daigre was late for work and was docked pay. After this violation, Daigre received a verbal reprimand warning him that additional violations will result in a stronger penalty.

(5) Dec. 21, 2003: Daigre fabricated his productivity sheets and received a written reprimand.

(6) Dec. 21, 2003: Daigre arrived to work with unshined shoes and was therefore not ready for duty. He received a written reprimand.

(7) Jan. 7, 2004: Daigre was suspended from duty for one day for sick-time abuse. From May, 2003 through December, 2003, Daigre took eight sick days in conjunction with days off. This showed a pattern of abuse of sick days and caused the certain shifts to be short a sufficient number of officers.

(8) Jan. 1, 2004: Daigre failed to properly book a prisoner prior to putting him into the holding cell. After Daigre left, a detention officer and a deputy searched the prisoner and found a 12 ½ inch knife concealed on him. This negligence put other officers and employees in danger. Daigre received a three-day suspension from duty.

(9) May 3, 2004: Daigre called in sick for duty less than two hours prior to the start of the shift and received a written reprimand.

These nine disciplinary actions occurred over the course of fifteen months. Daigre was ultimately terminated on June 4, 2004. His termination letter from Chief Joshua cited these disciplinary issues and the fact that Daigre did nothing to rectify or improve his conduct as reasons for his termination.

Daigre attempts to soften the blow of these actions by referring to a letter he received from Chief Joshua that said his "sincere demonstrated service reflects positive and is admirable." Daigre also refers to a positive report on a background check that Harvey conducted on all employees after Kellogg became mayor. However, Daigre received eight of his nine disciplinary actions *after* he received the letter from Chief Joshua and *after* the background check. The fact that all, except one, of his disciplinary reprimands occurred after the positive letter and background check diminishes whatever mitigation value those positive reports may have.

Further, neither the letter nor the background check proves that Daigre was meeting Harvey's legitimate expectations at the time he was fired. *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993) (stating that the "critical issue is whether [he] was performing well in his job *at the time of [his] termination*.") (emphasis added).

Daigre also references a pay raise he received on December 1, 2003. He argues that Harvey granted him this pay raise due to his "exemplary job performance." In reality, the Payroll Change Notice indicates that Daigre only received a pay raise because the pay scale changed. This was not a merit-based raise and it does nothing to show that Daigre was meeting Harvey's legitimate expectations.

As is clear in Chief Joshua's termination letter to Plaintiff, Daigre was not fired due to a singular incident, but rather after the culmination of fifteen months of disciplinary actions. These actions were considered in the aggregate and not individually. This, coupled with the fact that Daigre did not pass his civil service oral interview and remained an appointed officer well beyond the 120 days allowed for appointees, led to Daigre's termination. Daigre was not meeting Harvey's legitimate expectations for its employees, and as such, Daigre cannot establish the second element of a prima facie case for reverse race discrimination.

### 2. Similarly Situated Employees

Daigre also cannot satisfy the fourth element because he cannot identify a similarly situated non-white employee who was treated more favorably than he was. For the comparison, Daigre must point to a non-white employee who is "directly comparable . . . in all material respects." *Burkes v. Wis. DOT*, 464 F.3d 744, 751 (7th Cir. 2006) (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). Relevant factors include whether the

9

employees reported to the same supervisor, were subject to the same standards, had the same qualifications and engaged in similar conduct. *Id.*; *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Daigre attempts to compare himself to Commander Keel. This is not a sufficient comparison. First, Commander Keel is two ranks above Daigre, a patrol officer. While both men ultimately report to Chief Joshua, Daigre first reports to various sergeants.[3] A sergeant is a lower rank than Commander so it is impossible that Commander Keel and Daigre reported to the same supervisor.

Further, Commander Keel and Daigre did not have the same qualifications. Commander Keel was a civil service officer while Daigre was an appointed officer. In his response, Plaintiff asserted this was not true.[4] However, a letter from Herman Head, Chairman of the Civil Service Commission to Chief Joshua states that while Commander Keel was never officially confirmed as a civil service officer, his employment status was changed retroactively to reflect his status as a civil service officer as of January 1997.

Finally, Commander Keel and Daigre did not engage in similar conduct. Daigre's termination resulted after a litany of disciplinary actions, failing his oral interview and remaining well past the 120 days allowed for appointed officers. Commander Keel, on the other hand, was not terminated after he supposedly made racist remarks on the police radio and told officers that they could take bribes, so long as there were no witnesses. While Commander Keel's remarks are not appropriate or condoned, if it is true that he made them, they are not similar to Daigre's

---

[3] This is shown by the fact that all of the disciplinary action requests against Daigre come from the various sergeants to whom he reported.

[4] Daigre relies on Chief Joshua's deposition testimony admitting that Commander Keel did not pass the civil service test.

conduct. Therefore, Commander Keel is not similarly situated to Daigre for purposes of establishing the fourth element, and thus Daigre fails to meet his initial burden.

### C. Legitimate Non-discriminatory Reason for Termination and Pretext

Even if Plaintiff could meet his initial burden, Harvey had a legitimate non-discriminatory reason to terminate Daigre: nine disciplinary actions, he did not pass his oral interview, and he was well beyond the 120 days allowed for appointed officers. Based on the record before me, no reasonable fact finder could conclude that Harvey's stated reason for Daigre's termination was a pretext. Daigre relies on Chief Joshua's deposition testimony, in which Chief Joshua said that there were some appointed officers employed for more than 120 days and others who were employed despite failing the civil service test. Even if I were to assume that these two proffered reasons for Daigre's termination are pretextual (the expiration of the 120-day appointment term and Daigre's failing the civil service test), Chief Joshua still had a legitimate reason to terminate Daigre: numerous, repeated, and continual disciplinary actions throughout the course of his employment. Terminating Daigre was well within Chief Joshua's discretion, and I do not "sit as a super personnel department that reexamines an entity's business decisions in cases where discrimination is alleged." *Hong*, 993 F.2d at 1262-63.

In his final argument, Daigre attempts to use the statistic that thirty-five out of thirty-six people Harvey hired in its police department after Kellogg became mayor were African-American or Hispanic. Daigre asserts that this shows that Harvey had a "whites need not apply" policy. However, this statistic is incomplete. If a plaintiff is to use data as evidence of discrimination in the workplace, he must examine all of the employer's decisions to determine if race plays a role. *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 829 (7th Cir. 2006). Looking at these numbers in a vacuum without knowing the number of positions available, number of

11

candidates applying or the qualifications of the candidates is useless. *Id.* Since Daigre does not provide any supplemental information to put these numbers into context, the statistic has no real value. Therefore, there is no reason to believe that Harvey's reason for terminating Daigre is pretextual.

## V. CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment is granted on both counts.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: July 30, 2009